EDSON F. EMERY, RESPONDENT, v. GEORGE BALTZ AND
SOLOMON SCHEU, APPELLANTS.

*Sureties—when they are not discharged from liability by the release of the principal from arrest—when they cannot avail themselves of counter-claims existing in favor of their principal—Bond—how affected by promise of obligee.*

In an action upon a bond given by the defendants as sureties for one Hack, conditioned that the latter should faithfully perform his duties, as agent of a life insurance company, and pay all indebtednesses to the plaintiff, it appeared that in an action previously brought by the plaintiff against Hack, he had caused him to be arrested under an order granted therein, and had subsequently released him from such arrest, upon his confessing a judgment for the amount due to the plaintiffs.

*Held,* that his so doing did not prevent his maintaining this action upon the bond.

The defendants sought to set up as counter-claims, causes of action existing in favor of Hack against the plaintiff.

*Held,* that as Hack was not a party to this action, the defendants could not avail themselves of them.

Effect of a verbal promise by the obligee of a bond to the sureties thereon, that if the principal named in the bond did not pay over moneys collected promptly he would stop his business and notify the sureties, considered.

APPEAL from a judgment in favor of the plaintiff, entered in Erie county upon the report of a referee.

*A. G. Rice* for the appellants. The discharge of Hack from arrest was a surrender of a security which the plaintiff had obtained for the collection of the money against the principal, and a surrender of such security discharged the sureties. (*Nesbit* v. *Smith,* 2 Bro. Ch. C., 579; *Hays* v. *Wood,* 4 Johns. Ch., 130; 1 Story Eq. Juris., §§ 501, 639; *Mayhew* v. *Crickett,* 2 Swanst., 185; *Capel* v. *Butler,* 2 Sim. & S., 457.) Any act of the creditor which increases the risk of the surety, discharges the surety. (*Brown* v. *Reggins,* 3 Kelly, 405; *Marshall* v. *Aiken,* 25 Vt., 328; *Herrick* v. *Orange County Bank,* 27 Id., 584; *Curran* v. *Colbert,* 3 Kelly, 239; *Com. Bank of Lake Erie* v. *Western Reserve Bank,* 11 Ohio, 444; *Carpenter* v. *King,* 9 Metc., 511; *Bangs* v. *Strong,* 10 Paige, 11, 16; *Hubbell* v. *Carpenter,* 5 Barb., 520; *Dixon* v. *Ewing,* 3 Ohio, 280; *La Farge* v. *Herter,* 5 Seld., 241; *Everly* v. *Rice,* 20 Pa., 297;

*Rees* v. *Berrington*, 2 Lead. Cases in Eq., pt. 2, 373; *Jones* v. *Bullock*, 3 Bibb, 467; *Carpenter* v. *Devon*, 6 Ala., 718; *Cone* v. *Miller*, 8 Serg. & R., 52; *Talmage* v. *Burlingame*, 9 Barr, 275.)

*S. S. Rogers*, for the respondent.

HARDIN, J.:

The plaintiff has recovered on a bond, given him by one Hack, and the defendants, as his sureties, conditioned for Hack's faithful performance of his duties as general agent of The Life Association of America, and that said Hack "shall at all times, when requested, make good all indebtedness to said Edson F. Emery . . . and shall also, on the first day of every month after this date, and at all other times when requested, render due and full account of, and deliver over unto said Edson F. Emery, all the money or other property belonging to him, which shall have been, or shall then be in the hands of said Michael Hack or subject to his control, so long as he shall continue in the employ of the said E. F. Emery, and so long as he shall continue to act for him, either with or without authority."

Prior to the execution and delivery of the bond by Hack and the defendants as his sureties, the plaintiff and Hack had entered into an agreement for the employment of Hack as such agent, which was to continue three years unless terminated by *mutual consent*. The agreement was referred to in the bond and was therefore known to the defendants, when they became sureties for Hack. It is now insisted that some time after the bond was delivered there was a conversation between the plaintiff and one of the sureties, to the effect that the sureties intended to withdraw from the bond and not be bound for Hack for the future. That the plaintiff then agreed with defendants that he would require Hack to account monthly and see that he did not get behind, and in case he did not pay up promptly every month, he would stop his business and notify defendants of the fact, and of the amount he was in default, and that the defendants relied upon that promise, and did not take measures to terminate their liability upon the bond. The evidence to establish such position was objected to as im-

material, and excluded by the referee, and the defendants took an exception. There was no consideration for such an agreement named in the offer. The bond, when read in connection with the agreement of appointment of Hack, showed an absolute undertaking for three years, unless terminated by mutual consent of Hack and Emery. It was not therefore in the sole power of Emery to terminate the agreement, and no reason appears why he should or could be made to surrender the bond taken for the faithful conduct of, and payment by Hack.

As the right to terminate the bond is not shown we fail to see how the doctrine of estoppel can be applied to the case, so as to prevent the plaintiff from asserting the defendants' liability, evidenced by the bond.

Nor was there such negligence shown or offered, as to discharge the obligation taken by the plaintiff for Hack's conduct and payment of moneys received by him. (*Trent Navigation Co.* v. *Harley*, 10 East, 34; *Nares* v. *Rowles*, 14 Id., 514; *London Assurance Co.* v. *Buckle*, 4 Moore, 153; 2 Story Eq. Jur., § 325; *Schroeppell* v. *Shaw*, 3 N. Y., 446; *Clark* v. *Sickler*, 64 Id., 231.)

Before the commencement of this action the plaintiff brought a suit against Hack, and under a provisional remedy obtained an order for his arrest, and subsequently released him from arrest on the order, upon his confessing judgment for the amount due the plaintiff. We are not able to say that the plaintiff thus deprived himself of the right to issue a body execution against Hack upon the judgment recovered. (*Meech* v. *Loomis*, 28 How. Pr., 209.) If the defendants had paid up the plaintiff's claim, and become subrogated to the right of the plaintiff, and then sought upon the judgment to arrest Hack, and failed to find him, or been prevented in any other way from asserting his liability to arrest, a different question would have been presented. It is not necessary to pass upon that question here.

There was an offer to prove the sixth answer, made and excluded. That answer set up several counter-claims, set up as such, which belonged to Hack, and upon which the defendants sought to recover " as a counter-claim." Hack was not a party to this action. He had the right to say whether such matters should be

used in this action, or in an independent action brought by him therefor. They were therefore, according to the rule laid down in such cases, unavailing to the defendants. (*Gillespie* v. *Torrance*, 25 N. Y., 306; *Lasher* v. *Williamson*, 55 Id., 619.)

This was a legal action, and the referee had no right to turn it into, or treat it as an equitable action. (*Webster* v. *Bond*, 9 Hun, 437.) The exception taken upon the denial of the motion for a nonsuit was waived in the argument before us, and we therefore do not consider it. The question as to whether Hack owed the plaintiff anything at the time he confessed judgment, was excluded, as it called for a matter of law. Besides, the answer of the defendants did not deny that judgment.

The referee properly found that the Habberstro note was taken as a collateral and not as payment. (*Noel* v. *Murray*, 13 N. Y., 167; *Gibson* v. *Tobey*, 46 Id., 637.)

Judgment affirmed.

TALCOTT, P. J., and SMITH, J., concurred.

Ordered accordingly.