STATE OF NORTH CAROLINA Ex Rel. GREENE COUNTY, Etc., v. NATIONAL BANK OF SNOW HILL, Receiver, et al.

(Filed 13 April, 1927.)

**1. Debtor and Creditor—Contracts—Guarantor of Payment—Assignment.**

Where the parties contract to pay a particular or specified debt of another, it is a guaranty of payment, and assignable by the one to whom it has been made.

**2. Same—Banks and Banking—State Deposit—Principal and Surety—Indemnity Bonds—Statutes.**

Where the State Highway Commission has received money from a county to build a certain road therein, and has required from a local bank in which the deposit had been made a bond indemnifying it against loss, and after abandoning the project has transferred the fund to the county assigning to the latter the security of the bond: *Held*, the sureties on the bond are liable to the county for the loss of the funds upon the failure of the bank of deposit, or of its successor bank, after its reorganization, that had assumed its liabilities.

**3. Contracts—Indemnity Bonds—Courts—Intent — Interpretation —Expression of the Parties.**

The interpretation of a bond of indemnity reciting the purpose for which it was taken will ordinarily be given controlling significance by the Court in construing the intent of the parties thereto.

**4. Demurrer—Evidence—Statutes.**

A demurrer to the evidence will not be sustained if it is sufficient under a liberal construction to sustain the plaintiff's action. C. S., 535.

APPEAL by individual defendants from *Nunn, J.,* at chambers, New Bern, N. C., 27 December, 1926. From GREENE.

Civil action to recover a deposit of $300,000, and to hold the defendants liable for the payment thereof, first, by reason of the official bond, in the penal sum of $25,000, given by the financial agent of Greene County with the Fidelity and Deposit Company of Maryland as surety thereon, and, second, because of the following terms contained in a surety bond, given for the full amount of said deposit and duly signed by the individual defendants, appellants herein:

"The condition of this bond is such that, whereas the North Carolina State Highway Commission has on deposit in the First National Bank of Snow Hill, North Carolina, the sum of three hundred thousand dollars ($300,000), and we, the undersigned, jointly and severally undertake, promise, and agree to save harmless, in all respects, the North Carolina State Highway Commission, because and on account of any deposit that has been, is now on deposit, or may hereafter be made with the First National Bank of Snow Hill, North Carolina, and we hereby guarantee unto the said North Carolina State Highway Commission the

STATE *v.* BANK.

payment, upon demand, of any funds of the North Carolina State Highway Commission now deposited in the First National Bank of Snow Hill, North Carolina, or that may hereafter be deposited therein by the North Carolina State Highway Commission, or any authorized officer thereof, it being the purpose and intention of the undersigned, by these presents, to bind ourselves, and each of them jointly and severally, to the payment of any funds now on deposit, or that may hereafter be put on deposit in the First National Bank of Snow Hill, North Carolina, by the North Carolina State Highway Commission."

The facts are that on 29 November, 1922, the commissioners of Greene County placed to the credit of the State Highway Commission, in the First National Bank of Snow Hill, the sum of $300,000, to be used in the construction of certain roads in said county. A month later, as appears from the date of the bond, the State Highway Commission caused the said First National Bank of Snow Hill to have prepared and executed the bond aforesaid, and delivered to it as a protection against loss on account of or by reason of said deposit.

Later, the First National Bank of Snow Hill, by action of its directors, went out of business, and the Bank of Greene was organized and took over all of its assets and assumed all of its liabilities.

In July, 1925, the State Highway Commission and the county of Greene entered into an agreement whereby the State Highway Commission was relieved of its obligation to build said roads as aforesaid, and the commission thereupon returned or transferred and assigned to the county of Greene the deposit above mentioned, and, at the same time, by written memorandum, duly transferred and assigned to the county of Greene the bond executed by the individual defendants as a protection against loss on account of or by reason of said deposit as aforesaid. In August following, the county made demand upon the Bank of Greene, successor to the First National Bank, for the said deposit, and accrued interest thereon, but the bank failed and refused to make payment. This suit is to enforce collection.

It is further alleged that the Bank of Greene is utterly insolvent; that the First National Bank of Snow Hill no longer exists; and that the directors of the Bank of Greene "are all, or in large part, the same as the sureties on the special bond hereinbefore set forth," etc.

From a judgment sustaining the demurrer interposed by the Fidelity and Deposit Company of Maryland (presumably *ore tenus,* as the record discloses no written demurrer by said defendant, though reference is made in the judgment to "the demurrer of the Fidelity and Deposit Company of Maryland herein filed"), and overruling the written demurrer filed by the individual defendants, the said individual defendants appeal, assigning error.

*J. A. Albritton, Albion Dunn, and Cowper, Whitaker & Allen* for plaintiffs.

*J. Paul Frizzelle and L. I. Moore* for defendants.

STACY, C. J., after stating the case: The answer to the question raised by the demurrer of the individual defendants depends upon whether the bond signed by them is one of strict suretyship, specially limited to the State Highway Commission, and therefore nonassignable, or whether it is a general guaranty of payment, assignable with the transfer of the deposit it was given to secure.

We concur in the view taken by the trial court, that the bond in question partakes of the nature of a general guaranty of payment, and is assignable with the debt it was given to secure. 2 R. C. L., 593-601; *Trust Co. v. Construction Co.,* 191 N. C., p. 667. For present purposes, it is sufficient to say that a guaranty of payment is an absolute or unconditional promise to pay some particular debt, if not paid by the principal debtor at maturity *(Jones v. Ashford,* 79 N. C., 173), and it is generally held that such a guaranty is assignable and enforceable by the same persons who are entitled to enforce the principal obligation, which it is given to secure. 28 C. J., 950; 5 C. J., 948; *Sykes v. Everett,* 167 N. C., p. 608; *Bank v. Libbey,* 101 Wis., 193; *Ellsworth v. Harmon,* 101 Ill., 274; *Claflin v. Ostrom,* 54 N. Y., 581; *Stillman v. Northrup,* 109 N. Y., 475; *Everson v. Gere,* 122 N. Y., 290; *Lane v. Duchac,* 73 Wis., 655; *Kimball Co. v. Mellon,* 80 Wis., 143.

Speaking of the distinction between a guaranty of payment and a guaranty of collection in *Cowan v. Roberts,* 134 N. C., 415, *Walker, J.,* delivering the opinion of the Court, said: "A guaranty is a promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another person who is himself in the first instance liable to such payment or performance. *Carpenter v. Wall,* 20 N. C., 279. There is a well-defined distinction between a guaranty of payment and a guaranty for the collection of a debt, the former being an absolute promise to pay the debt at maturity, if not paid by the principal debtor, when the guarantee may bring an action at once against the guarantor, and the latter being a promise to pay the debt upon condition that the guarantee diligently prosecuted the principal debtor for the recovery of the debt, without success. *Jones v. Ashford,* 79 N. C., 172; *Jenkins v. Wilkinson,* 107 N. C., 707; 22 Am. St., 911."

It would seem that the conversion of the First National Bank of Snow Hill into the Bank of Greene, viewing the allegations of the complaint in this respect as true, did not destroy or affect the guaranty of the individual defendants so far as their liability had become fixed at the time when the First National Bank of Snow Hill gave up its charter

under the national law and assumed the status of a State bank under the State law. *City Nat. Bank of Poughkeepsie v. Phelps,* 86 N. Y., 484; *First Soc. M. E. Church v. Brownell,* 5 Hun., 464.

It will be observed that in the latter part of the "condition" of the bond, as above set out, the parties themselves undertake to place an interpretation upon its meaning, "it being the purpose and intent of the undersigned, by these presents, to bind ourselves, and each of them jointly and severally to the payment of any funds now on deposit, or that may hereafter be put on deposit in the First National Bank of Snow Hill, North Carolina, by the North Carolina Highway Commission," which would seem to import without doubt a general guaranty of payment, and it is the general rule of construction that where, from the language employed in a contract, a question of doubtful meaning arises, and it appears that the parties themselves have interpreted their contract, practically or otherwise, the courts will ordinarily follow such interpretation, for it is to be presumed that the parties to a contract know best what was meant by its terms, and are least liable to be mistaken as to its purpose and intent. *Wearn v. R. R.,* 191 N. C., p. 580; *Lewis v. Nunn,* 180 N. C., 164; *Guy v. Bullard,* 178 N. C., 228; *Plumbing Co. v. Hall,* 136 N. C., 530; 2 Williston on Contracts, sec. 623; 13 C. J., 546; 6 R. C. L., 852.

The liability of the individual defendants, we apprehend, is not affected by the fact that the bond in suit was not signed by the principal, though this question was not debated on the argument, nor is it discussed in the briefs. *Clark v. Bank of Hennessey,* 14 Okla., 572; 2 Ann. Cas., 219, and note. See, also, Notes: 22 Ann. Cas., 1014; Ann. Cas. 1917 C, 1073.

We forego any further discussion of the case, as it is here on demurrer, and the defendants have not yet answered. They may plead, for aught we know, that the bond in suit was intended to be personal to the State Highway Commission, and ask for a reformation in its terms. *Stillman v. Northrup,* 109 N. Y., 473. Furthermore, when the language of an instrument is ambiguous and does not furnish conclusive evidence of its meaning, the courts are permitted to look at all the circumstances of the case and arrive at the intention of the parties from these sources of information. *Evansville Nat. Bank v. Kaufmann,* 93 N. Y., 273. But when a case is presented on demurrer, we are required by the statute, C. S., 535, to construe the complaint liberally, "with a view to substantial justice between the parties," and in enforcing this provision we have adopted the rule "that if in any portion of it or to any extent it presents facts sufficient to constitute a cause of action, or if facts sufficient for that purpose can be fairly gathered from it, the pleading will stand, however inartificially it may have been drawn or however uncertain,

defective and redundant may be its statements, for, contrary to the common-law rule, every reasonable intendment and presumption must be made in favor of the pleader." *Dixon v. Green,* 178 N. C., p. 209. See, also, *Lee v. Thornton,* 171 N. C., 209; *Renn v. R. R,* 170 N. C., 128; *Brewer v. Wynne,* 154 N. C., 467; *Blackmore v. Winders,* 144 N. C., 212.

It follows, therefore, from what is said above, that the demurrer interposed by the appealing defendants was properly overruled. *Mudge v. Varner,* 146 N. C., 147; *Voorhees v. Porter,* 134 N. C., 591; *Jenkins v. Wilkinson,* 107 N. C., 707.

Affirmed.